FILED
 2008 Feb-28  PM 04:32
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DANNY C. PIKE, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case. No.: 5:06-CV-4709-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Danny C. Pike, brings this action pursuant to Section 205(g) of the Social Security Act seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed his application for SSI benefits on July 19, 2004. (R. 36-38.) After his application was denied initially (R. 22-28), Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on April 3, 2006. (R. 145-69.) In his June 20, 2006 decision, the ALJ determined that Plaintiff was not eligible for SSI benefits because he failed to meet the disability requirements of the Social Security Act and retained the residual functional capacity to perform work at the light exertional level with certain limitations. (R. 10-18.) Plaintiff requested review of the ALJ decision by the Appeals Council, and after the Appeals Council denied

Plaintiff's request for review on September 19, 2006 (R. 4-6), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

Plaintiff has alleged a disability onset date of April 15, 2004. (R. 12.)  At the time of onset, Plaintiff was forty-six years old (a "younger individual 45-49" according to 20 C.F.R. § 416.963) and had limited education through the Ninth Grade, having never received his GED. (R. 15-16, 152-53.)  Plaintiff has past relevant work experience as a construction worker, medium and semiskilled. (R. 16, 157.)  Plaintiff alleges that he became unable to work due to lung and breathing problems, notably Chronic Obstructive Pulmonary Disease ("COPD"), obstructive sleep apnea, chronic bronchitis, Gastroesophageal Reflux Disease ("GERD"), and Coronary Artery Disease ("CAD"). (R. 14, 160-61.)

Plaintiff testified at the April 3, 2006 hearing that he lives in a house with his parents and is able to drive, although he does not do it often.  Plaintiff did drive the 30-minute commute to the hearing, however. (R. 15, 149-50, 156.)  Plaintiff complained at the hearing of difficulty breathing when exerting effort to accomplish tasks like getting the mail, and he sometimes uses Albuterol treatments. (R. 15, 160-62.)   Plaintiff also reported that he coughs a good bit at night but still manages to get about six hours of sleep. (R. 15, 153-54.)   Plaintiff does not lie down or recline during the day after he gets up, although he sits down to rest four or five times a day. (R. 154, 161-62.) Although Plaintiff testified at one point that he cannot perform yard work due to difficulty breathing, he also noted that in the Fall of 2005 before the April 2006 hearing, he was able to cut wood with his father. (R. 15, 159, 162-63.)  Plaintiff stated that he is able to do some very limited housework including sweeping, although he cannot tolerate dust. (R. 15, 154.)   He also can fix a sandwich but does not cook or grocery shop. (R. 15, 154-55.)  Plaintiff is a long-time smoker and

continues to smoke despite his doctors' warnings that he should quit. (R. 159-60.)

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

3

In this case, the ALJ determined that Plaintiff has severe impairments of COPD, obstructive sleep apnea, chronic bronchitis, GERD, and CAD (R. 14), although he found that Plaintiff's impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 14.) The ALJ found that Plaintiff has not engaged in substantial gainful activity at any time relevant to his decision. (R. 14.) However, the ALJ determined that Plaintiff retains the residual functional capacity to perform work in an environment with no excessive dust, chemicals, or fumes, provided such work is at the light exertional level with certain limitations, including lifting and carrying ten pounds frequently and twenty pounds occasionally, a sit/stand option, and only occasional but no repetitive climbing. (R. 14.)

According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (R. 14, 16.) Specifically, the ALJ found that although Plaintiff's impairments could reasonably be expected to produce the symptoms he alleges, Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms are not entirely credible. (R. 15.) The ALJ pointed out that the record does not contain any opinion from a treating or examining physician indicating that Plaintiff is disabled or even opining that Plaintiff has limitations greater than those outlined above by the ALJ. (R. 16.)

The ALJ called Patsy V. Bramlett, a vocational expert ("VE") who was present throughout the hearing and familiar with Plaintiff's background, to testify. (R. 165-68.) The ALJ asked Ms. Bramlett to assume hypothetically that an individual with Plaintiff's relevant vocational characteristics had the ability to perform light work with additional limitations including: a moderate

4

or less level of pain; a sit/stand option; occasional climbing; and no exposure to excessive dust, chemicals or fumes in the workplace. (R. 166.) In response to that hypothetical, Ms. Bramlett indicated that such an individual could perform work at the light level such as a parts inspector, bagger and assembler, and that those type of jobs exist in significant numbers in the regional and national economies. (R. 166-68.) Thus, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and, therefore, Plaintiff was not under a disability at any time through the date of the decision. (R. 17.)

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 9, at 8.) Plaintiff's only enumerated argument is that the ALJ's decision is not supported by substantial evidence (Doc. # 9, at 1, 5), and he asserts that the ALJ "focused solely on aspects of the record that support his conclusion and failed to give credit to substantial evidence which would support the Plaintiff's claim of disabling limitations" (Doc. # 9, at 5).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

Against the backdrop of applicable standards, the court finds that the ALJ's decision is due to be affirmed. As noted earlier, Plaintiff's entire argument to this court is that "[t]he ALJ's conclusion that the Plaintiff is capable of performing work on a sustained basis is irrational and is not supported by substantial evidence." (Doc. # 9, at 7.)[1] Plaintiff continues to assert that "[h]is condition of severe COPD could reasonably give rise to the limitations as testified . . . . [and] [t]he medical evidence together with the Plaintiff's testimony establishes that he would not be able to

---

[1] Although Plaintiff summarily asserts in his "Conclusion and Prayer for Relief" that "[t]he ALJ improperly discounted Pike's testimony of pain, and failed to fully and fairly develop the record," (Doc. # 9, at 8), Plaintiff has utterly failed to present *any* legal or factual support for those assertions. Accordingly, this court will only address the contentions that have been *actually argued* by Plaintiff in his brief.

sustain work on a regular basis." (Doc. # 9, at 7-8.)  The court disagrees.

The medical evidence before the ALJ was limited.  In June 2004, when Plaintiff was treated at the Decatur Community Free Clinic for wheezing, chronic bronchitis, and COPD, x-rays revealed normal lungs, and Plaintiff was prescribed medication.  (R. 89-92.)  He was referred in July 2004 for a pulmonary function test which revealed no significant limitations, although he did cough throughout the test. (R. 85.)  In March 2005, after reporting to the emergency room for chest pain, dizziness, bilateral ankle edema, and mild shortness of breath, Plaintiff was diagnosed with atypical chest pain, dyspnea, COPD, and peripheral edema.  (R. 98-109.)

Thereafter in April 2005, Plaintiff became a patient of Dr. Drenning at The Heart Center P.C. Dr. Drenning noted that Plaintiff's chest pain and shortness of breath had improved with use of Singulair, although he found that Plaintiff demonstrated risk factors for coronary artery disease with atypical symptoms and had decreased breath sounds. (R. 113-16.)  An echocardiogram revealed mildly reduced ejection fractions of 40-50 percent with global hypokinesis, and a graded exercise test (discontinued sometime after four minutes due to shortness of breath) revealed poor exercise ability, but was electrically and clinically negative for chest pain.  (R. 93, 95, 113.)

From September 2005 to February 2006, Plaintiff was treated with medications at Decatur Primary Care for breathing problems and GERD, and it was noted that Plaintiff continued to have severe COPD and reproducible exertional chest pain.  (R. 118, 121-23, 136-37.)  In October 2005, after Plaintiff underwent heart catheterization that revealed "minimal" nonobstructive coronary artery disease and low normal left ventricular function, he was referred for workup of noncardiac causes of chest pain. (R. 139-40.)  In January 2006, Plaintiff again reported difficulty breathing and numbness and tingling in his right arm. (R. 122.)

The medical evidence in the record makes clear that Plaintiff was repeatedly cautioned to stop smoking. In December 2004, it was noted that Plaintiff continued to "smoke 2 [packs per day]!!!!" and had been advised to stop. (R. 89, 91, 126.) In April 2005, the Heart Center noted that Plaintiff was still smoking. (R. 113-16.) During his treatment from September 2005 to February 2006 at Decatur Primary care, Plaintiff was continually advised to stop smoking. (R. 118, 121-23, 136.)

The court has carefully reviewed the ALJ's decision to determine if substantial evidence supports the ALJ's findings. It is clear that, contrary to Plaintiff's assertions, the ALJ evaluated all of the record evidence and the testimony at the hearing as a whole. Indeed, when the medical evidence is viewed comprehensively, it reveals (1) Plaintiff had improved COPD and breathing problems after conservative treatment through medication, (2) there were no significant limitations demonstrated by a pulmonary function test, (3) there were medical reports of "mild" shortness of breath, mildly reduced ejection fractions as seen on an echocardiogram, an electrically and clinically negative exercise test, and (4) there was "minimal" nonobstructive coronary artery disease and low normal left ventricular function seen after heart catherization. (R. 15-16, 85, 93, 95, 98-101, 113-16, 139.) Moreover, Plaintiff was repeatedly advised by medical professionals to stop smoking, which exacerbates his condition and diminishes the effects of his medication. (R. 89, 91, 113-116, 126, 134, 136.)

Most significantly, however, none of Plaintiff's treating or examining physicians noted any work-related limitations. *See* 20 C.F.R. § 416.927(d) (2007). The court therefore finds that the ALJ appropriately concluded that Plaintiff's statements concerning his impairments and their impact on his ability to work were not totally credible. (R. 14-16.) A thorough and complete review of all of

the evidence of record – including the documentary evidence and Plaintiff's testimony – reveals that substantial evidence supports the ALJ's findings.

**VI.   Conclusion**

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this     28th     day of February, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE